Case number 23-5232, Brian Adams et al. v. 3M Company. Argument is not to exceed 15 minutes per side. Mr. Scodro, you may proceed for the appellant. Good morning. Good morning. Thank you very much. May it please the court and counsel, Michael Scodro for the defendant, Appellant 3M, and as the timer indicates, I endeavor to reserve four minutes for rebuttal. Your Honor, the court, district court, made a number of legal errors here in concluding that the two cases before this court are not mass actions, and then remanding those cases back to state court. I can start with the first criterion, which is the need for a proposed joint trial of 100 or more plaintiffs, and that's easily satisfied here, as every court to consider this issue has concluded, as we detail in our briefs, whereas here you have a complaint that identifies 100 or more plaintiffs. It creates at least a presumption that there is a proposal under those circumstances to proceed as a joint trial. Does it make a difference what the Kentucky courts would likely do with this case? It does not, Your Honor. In fact, as we've seen in cases like the Third Circuit's in, or I should actually correct that, the Sary case in the Ninth Circuit, we've seen that even when the federal district court later concludes that there may be misjoinder in the case under the relevant rule, what matters is that there is a proposal to proceed as a joint trial, and indeed, that's the only workable rule. It's no surprise that the federal courts have unanimously reached that conclusion, and again, as we've said, court after court has noted in the words of the Seventh Circuit that one complaint, one trial is the norm. Now, that creates a rebuttable presumption under those circumstances. I'm sorry, Your Honor. Your connection isn't ideal, just if you're wondering why I was seeming to talk over you is because I thought you paused, but I'm just making the point that they didn't, impliedly, they proposed a joint trial. I wouldn't say they explicitly proposed a joint trial, and I guess I'm struggling a little bit with what to do with that. I mean, they didn't come out and say, we think this can all be handled in one hearing, or we think it's in DL, or we're having bellwether, and then everyone will be controlled by that disposition, so why should we run the inferences your way? Well, I think Your Honor hit it exactly right, and I apologize for any connectivity issues. I hope it doesn't plague us going forward, but Your Honor hit it exactly right, and I think the Ramirez Court put it in exactly the terms Your Honor used, that is to say, it creates a presumption, and that's the recognition that when we see a hundred or more plaintiffs joined, and in this case, joined pursuant to a rule, a Kentucky rule that permits joinder in the face of, and we can turn to this momentarily, common questions of law and fact, but under those circumstances, the only truly workable rule, quite frankly, because I think going beyond this becomes unworkable, and no court has embraced anything other than this as a starting point, that it makes sense to treat this as, and again, to use the words of Judge Easterbrook, one complaint, one trial is the norm, and it's not irrebuttable, as Ramirez goes on to say, and to Your Honor's point, it is an implied, I think it's fair to characterize that as an implied proposal. The court is then free to go beyond that and to consider other elements of the complaint, and in theory, Ramirez would go on to other filings in that same case that proceed removed. Would you call it a mass action if what they'd said explicitly was, in other words, it's a lot like an MDL. We do have some overlap, but we have lots of differences in, say, causation or injury, and what we want to do is we've got more than a hundred folks here, if we admit that, but what we really want is a bellwether trial of one. Would that count as a mass action? Well, not this case, Your Honor. It would, and Bullard, the Seventh Circuit's decision in Bullard so holds, Your Honor, that what Matt, and the reason that the Seventh Circuit reaches that conclusion in Bullard, and again, we don't have a request for bellwether here, but if we did, yes, we would contend that would be a mass action. The reasoning of Bullard is, look, if you look at the language of the statute, what it says is it's, we're looking for 100 or more persons proposed to try jointly. These are the claims of those individuals will still turn in a bellwether context on the disposition or one or more initially selected bellwether cases, and so the reasoning, we would urge this Court to embrace the reasoning of Bullard and to answer that question, yes, if that question were posed in this case. Now, what happens here, and again, the district court flipped this and started by looking for some explicit or unambiguous language requesting a joint proceeding, whereas Ramirez, in other cases, and that actually is a quote from Ramirez, looks for explicit and unambiguous statements that the plaintiffs seek to proceed individually to trial, through trial, whereas here you have the starting point, the presumption of a or more plaintiff. So the district court flipped that wrong thing. Indeed, if you look at the complaint here, looking for anything else in the way Ramirez does, once you have your presumption of 100 plus joint trial, actually, if anything, as we point out in our brief, so I won't belabor unless the Court has questions, but if anything, the complaint in this case, by using the word of requesting a single judgment, suggests that the intent is to proceed by joint trial, but what matters. What do you make of their argument that can be affirmed on another ground, the local controversy exception? Sure, happy to speak to that, Your Honor. So the local controversy exception, and while this builds on, in some respects, the fraudulent joinder, which is an issue we would very much urge this Court to consider because it is something that is hard to get up on appeal, and as we demonstrate in our brief, has become the subject of some ongoing abuse in our view, but with regard to local controversy, it's very, it's much, much easier burden for the removing party. We have to show that there was for naming the now two remaining local stores, and that the significant relief was not being sought. This case is precisely like cases like Clay that we cite in our reply brief, where you had Vons and Safeway selling paint, or excuse me, in that case, it was Chobani yogurt, and there was some alleged problem with the product. As the Court noted, the great bulk of the awards, the award is going to come from the manufacturers, not from the local retailers. This is not, you know, this is also like Eakins. It's not a case where you have, this is localized Kentucky-only injury. What's being alleged here is a massive effort to fraudulently receive federal certification that would apply across the country, and they've named one or two, two in this case, local stores claiming that they are somehow significant part of the case, and that they will be seeking a significant proportion, and it is a comparative analysis, as this Court held in Mason. A significant proportion of that relief is going to be sought from these two stores. Now, we know that if anything, the opposite is true. We know, and this gets us a little bit into the fraudulent joinder discussion and points raised there in our opening brief as well, before they raised local controversy in response, but far from being a and you can see from just the allegations and the complaint that there is a huge disparity between these two stores and the massive allegations. I'm going to take you back to the threshold question again. Would this case come out differently if the complaint had said, had proposed several trials, or just had used the plural? You know, you have a permissive joinder of over 100 people, and throughout it just uses plural. Plural in terms of judgments, plural in terms of trials. How would we say it's a mass action there? Your Honor, I think that would fall well short of the explicit and unambiguous language required to rebut the presumption recognized in Ramirez and other courts. I think that it's certainly conceivable that there would be, and those courts acknowledge as much, that there would be explicit and unambiguous language. Ramirez also acknowledges, and some of the other courts we cite do the same, that there may be a way for simply plaintiffs to name fewer than 100 individuals in a complaint. There are many things that a plaintiff can do, but what a plaintiff can't do is, and avoid removal under CAFA for a mass action, able to include explicit and unambiguous language that these are all going to be individually. And then ask the district court, as occurred here, to flip that burden and say, well, what the court should really be looking for, notwithstanding the presumption, is express language that we intended to proceed collectively. And I'll just comment, Your Honor, the plaintiffs have made the point in their briefs that what really ought to matter here, not the filings in this case, but the filings in other cases where the same similar or similar claims are raised by other plaintiffs. No court has embraced that notion. That would be an entirely unworkable standard. Plaintiffs haven't even tried to articulate what the meets and bounds of such a rule would be, but certainly it would be also inconsistent with not only common sense and administrability, but also with the text of the statute, which asks whether the action proposes to proceed with 100 or more plaintiffs, not whether other actions passed or future might ask that or make that same. I recognize my time is waning. I would urge the court to at least consider resolving the fraudulent joinder issue in this case. Happy to address it further and rebuttal, but I do want to make that point before reserving my remainder, if I may, Your Honor. Okay. Thank you, Mr. Scotro. Mr. Martin. Good morning, Your Honors, and may it please the court. There are two reasons why the lower court's opinion should be upheld in this case. First is that the plaintiffs did not request a joint trial. And second is that there is no commonality to meet the class characteristic of a mass action. On the first point, I'm with you that it doesn't say that, you know, you don't say we're going to do this in one case and that we don't go on to say they're common questions of law and fact. But it does talk about a joint trial. It does talk about a judgment. It is one complaint. Aren't those fair inferences? And, you know, the word is fair. Well, I think you have to look at collectively everything and not just singularly the petition. And no court has just looked singularly at the petition. Every court that we cited in our brief and that's cited by 3M has looked to what's going on behind the petition. The death knell for the plaintiff on a CAFA jurisdiction, in my view, looking at cases like argues inside of his petition and his case that the case should be consolidated and tried together. And uniformly, the courts have held that's enough to invoke CAFA. And so you're right, Your Honor, when you look at Nessel, the starting point that Nessel opinion of this court from 2020, the starting point is to look at the language of the statute and what does proposed mean. In Parson v. Johnson & Johnson, the Tenth Circuit actually gave a definition of that. That was a mesh product liability case. And in that case, the court indicated that what proposed means is that there is an intentional act by the plaintiffs to request a collective joint trial. That didn't occur here. In fact, what happened at the lower court, both at the trial court level here on the federal level, as well as the lower court in Kentucky, is the plaintiffs actually opposed joint trials as reflected on page nine of our brief. And the quote that's recited there is a quote from the plaintiffs where we were advocating individual trials collectively amongst these groups of cases. And quite frankly, so was 3M in that same course of events. In this lower court opinion, the first thing that. What part of this turns on the conduct of the defendants? Well, I don't think that I think that the conduct of the defendants is instructive. But why? But why? I mean, I'm trying to figure out what part of the statute says, look at what the defendants do. I don't think I think you're right, Judge. I don't think the defendant's conduct is looked at here, except I think. Can I just ask a practical and I'm sure quite naive question and just forgive me if it's just totally clueless, but one looks at this and one just is inclined to say, OK, fine, it's a little hard to figure out exactly what a proposal is. It's, you know, and I'm granting you, it's not crystal clear and it's just hard to know, and maybe it just turns on presumptions. But why isn't it just incredibly simple for a plaintiff who thinks removal is a bad idea? Just to, you know, file five complaints of, you know, am I missing? It just seems like such an easy solution if one doesn't like federal courts or CAFA or whatever the objection is. Well, that's not precluded a CAFA removal before in other circuits. And I believe it is the, trying to remember the case there. It's the Italian, the Scimone case in the 11th Circuit where the plaintiffs didn't file 100 cases, 100 people per case. They had multiple lawsuits all in one court and they were removed under CAFA. And the argument was still made. You have this collection of plaintiffs with the same claim that involved a cruise ship incident. And the court rejected that because the query from all of the circuits is not just to look at the petition or the complaint, but to look at the conduct of the plaintiffs, because the word propose is an active verb that requires some action by the plaintiff to affirmatively request a single trial. And so I don't know that it really matters in the context of the circuit opinions, whether there's 100 or less than 100, you could still be removed if you have a number of cases, which we do here. They're actually 13 down in Kentucky courts, two with more than 100. And we have steadfastly argued in all of those cases that there have to be individual trials. But I mean, well, but you would have solved your problem here if you'd done two things, have fewer than 100 and explicitly said in the complaint, these all require individual trials, given the differences in causation, damages, injury, et cetera. Well, I think that can be inferred from our complaint because the way the complaint is written, you can see that the complaint and the structure of the complaint. And that's really what Ramirez talks about. Third Circuit 2017, Ramirez says, got to look at the structure of the action as on the face of the complaint. And if you do so here, which is what the lower court did, the structure of the action names nine different products. That's a lot of products. Each one of these coal miners worked at a different location. That is hundreds of employers. Employer liability is a key component of the discussion in these cases. So you're not going to you can't try these cases collectively. You couldn't try one case because there is no commonality. That really gets to the second point. And this court looked at the commonality issue in Martin versus Bear Dayton in 2018. But doesn't permissive joinder under Kentucky law require some commonality? No. The only thing that's required under the Kentucky statute, the only thing that's allowed is that you can file them together. But there is no commonality requirement. It is merely you could file joint actions. There's no nothing in the statute that says they they must have a commonality requirement. Same with the rule. Same with the rule. Same with the rule. That's correct, Your Honor. Same with the rule. So you could you can collectively file the as the lower court noted, the only really common characteristic between these cases is the fact that all these guys are coal miners. And that's true. There's really nothing beyond that that makes them similar. We have. How about Kentucky? How about Kentucky Civil Procedure Rule 20.01? That's the that's the permissive joinder rule. And it says a complaint may join multiple plaintiffs in a single action when there is, quote, a question of law or fact, quote, that is, quote, common to all, quote, unquote, the plaintiff's cases. I mean, that doesn't strike me as a very surprising rule. Well, every state has that rule. In other words, you don't just join cases that have the same lawyer, but nothing else is similar, right? That has to be right. Yeah, I know. I think you're right, Judge. I think that's absolutely true. You can't can't combine a car wreck case with a coal miner case. Yeah. So I suppose there is some commonality in terms of the fact that all these men are coal miners and they use respirators and underground mines. But that's where it stops. You simply couldn't practically try. What's your goal? What's your goal in these cases? Like a bellwether trial or two? Is that the kind of what you're imagining? No, we are. We argued steadfastly against bellwether trials as reflected in a briefing. We were consistently have argued against that. You can't try these together. One doesn't serve as an example for another because they're different products. What about like, I mean, take just 3M. I don't want to pick on them, but I mean, it sounds like they're a relatively significant player in this. If it's shown that the product was safe, isn't that pretty important? And by contrast, if it's found unsafe, isn't that pretty important to everyone? Because it's not, Your Honor, because the next case may involve a different year of use, a different set of regulations that would apply because the regulations change over time, a different product, a different model number, because there are multiple models here. So, you know, could you make an estoppel argument, I guess, is what you're suggesting. If you get a verdict in favor of 3M in one case, in the next case, you couldn't because there's no commonality between cases. You couldn't argue. There's been a verdict against 3M in Kentucky, and I couldn't take that verdict and argue it in any of my cases because there's just too many variances between cases and between plaintiffs in order to do that. It's not just variances of products, but product use. Coal miners, they're always alleged to be responsible in these cases to some degree. It's their fault, not the respirator's fault. And so their safety conduct comes in question. And there is not uniformity on that fact issue at all because they're all different employers. So there's no... Mr. Markham, I'm still having trouble accepting everything that you just said, figuring out how you were able to join these multiple plaintiffs in a single action under the Kentucky rule. There's a simple rule that says you can file multiple claims, and that's all it says. It doesn't say anything else. It just says you can file multiple claims. It's in the statute, and you can file multiple claims together, and that's the only reason they were filed together. So when you say it's in the statute, are you referring to something other than what Chief Judge Sutton was asking you about, about Kentucky Civil Rule 20.01? Yes, and I'm sitting here trying to remember the statute, and I did not write it down. I've got it around here someplace because I've looked at it recently, and I believe it's chapter 56, but I could be wrong on the number. And it simply allows claims to be filed together, and it doesn't say anything else. It's basically a cost-saving measure, I think, in Kentucky courts, and it doesn't have any requirements for commonality. It just says claims may be filed jointly, together. But you just said... I thought we kind this up a few minutes ago. You just said you can't join a car case with a respirator case, right? Right. I agree there has to be some similarity between the cases. But I mean, you can use your time how you want. I thought you had kind of agreed that Kentucky, like everyone else, has permissive jointer rules, which talk about common questions of law or fact. I'm not saying that ends the case, but I thought you had to come to grips with that. You're saying, no, I don't want to come to grips with that. I'm going to talk about a statute that lets me join anything, and I don't mind sticking with this argument, but I don't know if it's a great use of your time. Well, I think the fundamental question to me is, when you look at your class action, does it have the characteristics of a class? And it doesn't. But the word is mass action. The word is proposal. And you can have a proposal that turns out to be rejected. I mean, that's the nature of a proposal. I mean, ask the Spurn lover. She said no. Right. But I never asked. That's the key point. Well, that's what we're trying to figure out. I never asked the Spurn lover. And so I never got rejected because I never had the guts to ask. I've heard people saying this for a long time. No one's ever said no. Anyway. Well, how about another way of putting this point? What's your favorite Court of Appeals case? If the three of us read that Court of Appeals case, we're going to have the revelation that the district court judge was right. What's your favorite case from any circuit? I don't care what circuit we read it. We'll see your points and see the light. Well, I mean, I think Parson, which is the 10th Circuit 2014. But I really think you can look at all of them and look at the outcome of all of them. And in every one of them, the commonality, the common point about whether there is a joint trial proposed is by looking to the underlying conduct of the plaintiffs. And if they move to consolidate, if they ask for a joint trial, if they do something affirmative, then you lose. If you don't do that. And in fact, it was the opposite here. We fought it. We opposed it. And to the extent that 3M is asking for the same thing, we're agreeing with 3M. And that's why I thought it was relevant to mention our underlying conduct. If you look at all of these cases, Bullard, Parson, Scimone, Coral, and Rehab at Last, every one of them is looking to as what Cobra versus Zinine in the 9th Circuit said, what the plaintiffs have said and done in the underlying record. And that's what the lower court did. And if you look at the underlying record, we steadfastly opposed any request for a joint trial. We advocated individual trials. Aren't the cases that you're citing ones that involve less than 100? Some of them do and some of them don't. Coral is 117 passenger airplane crash. The Ramirez case was 113 birth control users. Scimone involved a cruise ship group. I don't have a number. Parson involved 12 different cases of vaginal transvaginal mesh. And that case, you know, really said, look at the word proposed and what it means. And it means an affirmative act to request a joint trial. And that just didn't happen here. Okay. Thank you, Mr. Martin. Mr. Scodro, you have your rebuttal. Thank you very much. I just wanted to clarify a couple of points if I could. I think we've covered that rule 20.01 controls here. That is, in fact, as plaintiffs themselves acknowledge in their response to the motion to sever in the district court. Of course, the courts look, the point was made that the courts will look at things other than just the 100 plus and will look at the complaint, for example. And as we've discussed, that's exactly right. The presumption is the presumption. And if there were something, again, in the words of Ramirez, explicit and unambiguous the other way, that that's why courts are looking at the rest of the complaint, for example. The Scimone case actually affirmed a remand. There was, I think, a suggestion that that case was one where plaintiffs failed to keep it out of federal court. They failed to, they hadn't named 100 plaintiffs in that single complaint. And I'll just add that while the court there was clear that naming 100 or more plaintiffs in a single complaint, that's a way, in the words of the court, again, yet another court saying this, oppose a joint trial. So, and the other cases referenced where there were, I think, the cases that counsel may have been referring to Abbott Labs, Korber, those were both cases where you did have multiple, you had multiple complaints that would add up to over 100. But to the court's point, there you had motions to join those by the plaintiffs. And that's why the plaintiffs defeated their own effort, if it was an effort, to avoid CAFA removal. Your Honor, I, Your Honors, I would like to, if I could just for a moment, we make, we develop this in our brief. We argue that this court can certainly go beyond, under the definition of the word order, go beyond simply the CAFA issue that we've been discussing. And we do think that because fraudulent jointer is a difficult issue to raise on appeal, there would be extraordinary efficiencies to raising it here in connection with CAFA case. As we point out in our brief, there's been an ongoing effort to use often these same two stores as a way to defeat diversity jurisdiction by naming these particular stores. These are, the theory is that somehow they knew or should have known. And that theory will avoid application of Kentucky's very clear middleman statute intended to protect retailers like these stores from precisely these kinds of claims. As we point out in our brief, that you simply, there's no way that the Kentucky courts would recognize an affirmative duty on the part of a store selling all kinds of products to have looked into a particular line and a particular, embedded in a particular appendix that they provide, which even they use an expert to interpret, that there is a duty to read all of that and to divine from that the fact that these products are unsafe. Not only did OSHA itself later rebut that in a 2006 study. So even if they were reading everything out there, they would have come to conclude that these were safe products. But it's unimaginable that this would have been, that this is the legal duty that Kentucky courts would recognize. One can only imagine what that would mean for your local store that sells 700 products, each one of which you could dive into the literature about and get your own expert to try to then interpret. Plaintiffs have done here. So we think it's a clear, clear case of in addition to the CAFA issues, we would simply urge this court to reach that if the court is willing to do so. Thank you, Mr. Skodra. Thank you, Mr. Martin. We appreciate both of your arguments. Thank you for the prompt briefs, which we normally wouldn't ask for you to do so quickly, but another part of the statute tells us to do it quickly. So anyway, thank you very much. We appreciate the arguments and thank you as always for answering our questions. The case may be adjourned.